**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| AMERICAN FREEDOM DEFENSE INITIATIVE; PAMELA GELLER; and ROBERT SPENCER, <br><br>             Plaintiffs, <br><br>       -v.- <br><br> KING COUNTY, <br><br>             Defendant. | Case No. 2:13-cv-01804-RAJ <br><br> **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> [Fed. R. Civ. P. 65] <br><br> NOTE ON MOTION CALENDAR: November 1, 2013 <br><br> **ORAL ARGUMENT REQUESTED** |

     Plaintiffs American Freedom Defense Initiative ("AFDI"), Pamela Geller, and Robert Spencer (collectively referred to as "Plaintiffs"), by and through their undersigned counsel, hereby move this court for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendant King County's (hereinafter "Defendant" or "County") prior restraint on Plaintiffs' speech and thereby permitting the display of Plaintiffs' advertisement on Defendant's bus advertising space.

     As set forth further below, Plaintiffs are likely to succeed on the merits of their First Amendment claim, they are likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips sharply in Plaintiffs' favor, and granting the requested injunction is in the public interest.

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

Therefore, Plaintiffs respectfully request that the court grant this motion and preliminarily enjoin Defendant's restriction on Plaintiffs' speech.

## STATEMENT OF FACTS

Plaintiffs Geller and Spencer co-founded AFDI, which is a nonprofit organization that is incorporated under New Hampshire law. Plaintiff Geller is currently the president of AFDI, and Plaintiff Spencer is the vice president. (Geller Decl. at ¶¶ 2, 3 at Ex. 1).

AFDI is a human rights organization dedicated to freedom of speech, freedom of conscience, freedom of religion, freedom from religion, and individual rights. AFDI achieves its objective through a variety of lawful means, including through the exercise of its right to freedom of speech. AFDI exercises its right to freedom of speech by, *inter alia*, purchasing advertising space on transit authority property in major cities throughout the United States, including Seattle, Washington. AFDI purchases these advertisements to express its message on current events and public issues, particularly including issues involving global terrorism (hereinafter referred to as "AFDI's advertising campaign"). (Geller Decl. at ¶¶ 5-7 at Ex. 1).

Plaintiffs Geller and Spencer engage in free speech activity through the various projects of AFDI, including AFDI's advertising campaign. (Geller Decl. at ¶¶ 4, 7 at Ex. 1).

Based upon public information, Defendant King County is a municipal corporation. In the performance of its governmental duties, Defendant operates a public transit system (King County Metro Transit), which includes more than 1,400 buses. (Geller Decl. at ¶ 8 at Ex. 1).

Defendant leases space on the exterior of its buses for use as advertising space. Pursuant to its policy and practice, Defendant accepts a wide variety of noncommercial and commercial advertisements for display on its advertising space, including public service, public issue, and political issue advertisements on controversial issues. (Geller Decl. at ¶¶ 9-11 at Ex. 1).

Indeed, Defendant has leased its advertising space for political and social commentary

PLS.' MOT. FOR PRELIM. INJ.
Case No. 2:13-cv-01804-RAJ

2

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

advertisements covering a broad spectrum of political views and ideas.  For example, based upon published reports and statements by government officials, Defendant leased its advertising space for an advertisement sponsored by the Federal Bureau of Investigation ("FBI") and / or the Joint Terrorism Task Force ("JTTF"), advertising global terrorism awareness ("FBI-JTTF Advertisement").  The FBI-JTTF Advertisement appeared as follows:



(Geller Decl. at ¶¶ 12-13, Ex. A, at Ex. 1).

Based upon published press reports, the FBI-JTTF Advertisement was displayed on Defendant's buses in or about June 2013.  According to these reports, the FBI decided to terminate the FBI-JTTF Advertisement campaign after receiving complaints from politicians and advocacy groups that the list of wanted global terrorists pictured in the advertisement appeared to include mostly Muslim terrorists.  Yet, the FBI publishes an official listing of the world's most wanted global terrorists on its website located at http://www.fbi.gov/wanted/wanted_terrorists/@@wanted-group-listing ("FBI Terrorist List"), and of the thirty-two listed terrorists, thirty individuals with Muslim names and / or are wanted for terrorism related to organizations conducting terrorist acts in the name of Islam. (Geller Decl. at ¶¶ 14-17, Exs. B & C, at Ex. 1).

Of the two non-Islamic terrorists included on the FBI Terrorist List, one (Daniel Andreas San Diego) has ties to animal rights extremist groups and the other (Joanne Deborah Chesimard) is an escaped murderer who was part of a revolutionary extremist organization known as the Black Liberation Party.  (Geller Decl. at ¶ 18, Exs. B & C, at Ex. 1).

Based upon published reports, additional advertisements accepted by Defendant for

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

display on its advertising space include the following:

- In or about 2012, Defendant permitted the display of a pregnancy counseling center's advertisement that was sufficiently controversial that it was vandalized by a sticker as evidenced immediately below:



(Geller Decl. at ¶ 19 at Ex. 1).

- In or about 2009, Defendant permitted the display of a highly politicized advertisement to "Save Gaza" as reproduced immediately below:



(Geller Decl. at ¶ 19 at Ex. 1).

- In or about December 2010, Defendant accepted for display on its buses the below advertisement, which states, "ISRAELI WAR CRIMES: YOUR TAX DOLLARS AT WORK," but then ultimately rejected it only *after* receiving credible threats of violence if the advertisement ran on the County's buses. *See Seattle Mideast Awareness Campaign v. King Cnty.*, 771 F. Supp. 2d 1266, 1269-70 (W.D. Wash. 2011).

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774



(Geller Decl. at ¶ 19 at Ex. 1).

Accordingly, Defendant permits, as a matter of policy and practice, a wide variety of commercial, noncommercial, public service, public issue, and political issue advertisements on its advertising space (hereinafter "Free Speech Policy"). (Geller Decl. at ¶ 20 at Ex. 1).

Pursuant to Defendant's Free Speech Policy and particularly in light of the fact that Defendant permitted and displayed the FBI-JTTF Advertisement, AFDI submitted for approval on or about July 30, 2013, an advertisement that was substantively similar to the FBI-JTTF Advertisement ("AFDI Advertisement"). The AFDI Advertisement appears as follows:

(Geller Decl. at ¶¶ 21-24, Ex. D, at Ex. 1).

The AFDI Advertisement includes the identical pictures and names of the wanted global terrorists that appeared in the FBI-JTTF Advertisement. Indeed, the AFDI Advertisement presents a similar educational and public service message as the FBI-JTTF Advertisement. Both advertisements alert the public of the importance of stopping global terrorism by raising awareness of the threat and encouraging citizens to communicate with the appropriate government agencies when they have information leading to the possible whereabouts of a global terrorist. (Geller Decl. at ¶ 25 at Ex. 1).

The message of the AFDI Advertisement is very timely in light of current world events where global terrorists are engaging in violent jihad against America's national security

interests throughout the world and at home.  (Geller Decl. at ¶ 26 at Ex. 1).

Acceptance of political- and public-issue advertisements, specifically including Defendant's acceptance of the FBI-JTTF Advertisement, demonstrates that Defendant's advertising space is suitable for the AFDI Advertisement.  (Geller Decl. at ¶ 27 at Ex. 1).

On August 15, 2013, AFDI's attorney, David Yerushalmi of the American Freedom Law Center, received an email from Mr. Scott Goldsmith, Esq., the executive vice president and chief commercial officer of Titan Outdoor LLC (a/k/a Titan360 and Titan) (hereinafter "Titan"), the advertising agent working for and on behalf of Defendant to lease advertising space on the County's buses.  This email, which sets forth Defendant's official rejection of the AFDI Advertisement, stated, in relevant part, as follows:

> Based on our current advertising policy, the American Freedom Defense Initiative ad, "FACES OF GLOBAL TERRORISM", cannot be accepted.  The advertisement does not comply with Subsections 6.2.4, 6.2.8 and 6.2.9, set forth below.
>
> 6.2.4  <u>False or Misleading</u>.  Any material that is or that the sponsor reasonably should have known is false, fraudulent, misleading, deceptive or would constitute a tort of defamation or invasion of privacy.
>
> 6.2.8  <u>Demeaning or Disparaging</u>.  Advertising that contains material that demeans or disparages an individual, group of individuals or entity.  For purposes of determining whether an advertisement contains such material, the County will determine whether a reasonably prudent person, knowledgeable of the County's ridership and using prevailing community standards, would believe that the advertisement contains material that ridicules or mocks, is abusive or hostile to, or debases the dignity or stature of any individual, group of individuals or entity.
>
> 6.2.9  <u>Harmful or Disruptive to Transit System</u>.  Advertising that contains material that is so objectionable as to be reasonably foreseeable that it will result in harm to, disruption of or interference with the transportation system.  For purposes of determining whether an advertisement contains such material, the County will determine whether a reasonably prudent person, knowledgeable of the County's ridership and using prevailing community standards, would believe that the material is so objectionable that it is reasonably foreseeable that it will result in harm to, disruption of or interference with the transportation system.

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

(Geller Decl. at ¶¶ 28, 29 at Ex. 1).[1]

As a result of Defendant's rejection of the AFDI Advertisement, Plaintiffs have and will continue to suffer irreparable harm. (Geller Decl. at ¶¶ 29, 31 at Ex. 1).

## ARGUMENT

### I.    Standard for Issuing a Preliminary Injunction.

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."[2] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs satisfy each of these considerations.

### II.    Plaintiffs Are Likely to Succeed on the Merits of Their First Amendment Claim.

Plaintiffs' First Amendment claim is reviewed in essentially three steps. First, the court must determine whether the speech in question—Plaintiffs' advertisement—is protected speech. Second, the court must conduct a forum analysis as to the forum in question to determine the proper constitutional standard to apply. And third, the court must then determine whether Defendant's speech restriction comports with the applicable standard. *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456, 466 (S.D.N.Y. 2012) (analyzing a free speech claim in "three parts"); *Saieg v. City of Dearborn*, 641 F.3d 727, 734-35 (6th Cir. 2011) (same); *cf. Ariz. Life Coal., Inc. v. Stanton*, 515 F.3d 956, 968 (9th Cir. 2008) ("The first

---

[1] Attached to the email was a document titled "Transit Advertising Policy," which sets forth the written advertising policy of Defendant. (Geller Decl. at ¶ 30, Ex. E, at Ex. 1). This policy served as the basis for Defendant's rejection of the AFDI Advertisement. (*See* Geller Decl. at ¶¶ 28-30, Ex. E, at Ex. 1).

[2] *See also Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (stating that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met") (quotations and citations omitted).

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

step in assessing a First Amendment claim relating to private speech on government property is to identify the nature of the forum.").

Moreover, Defendant's "refusal to accept [Plaintiffs' advertisement] for display because of its content is a clearcut *prior restraint*." *Lebron v. Wash. Metro. Area Transit Auth.*, 749 F.2d 893, 896 (D.C. Cir. 1984) (Bork, J.) (emphasis added). And "[a]ny system of prior restraints of expression comes to this Court bearing a *heavy presumption* against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) (collecting cases) (emphasis added).

### A.    Plaintiffs' Advertisement Is Protected Speech.

The first question is easily answered. Sign displays constitute protected speech under the First Amendment, *Hill v. Colo.*, 530 U.S. 703, 714-15 (2000) ("[S]ign displays . . . are protected by the First Amendment."), and this includes signs posted on bus advertising space, *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341 (6th Cir. 1998) (hereinafter "*United Food*"); *see also Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786-87 (9th Cir. 2008) (treating sign displays on trucks as fully protected speech).

### B.    Defendant Created a Public Forum for Plaintiffs' Speech.

"The [Supreme] Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for [expressive] purposes." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 800 (1985). Forum analysis has traditionally divided government property into three categories: traditional public forums, designated public forums, and nonpublic forums. *Cornelius,* 473 U.S. at 800. Once the forum is identified, the court must then determine whether the speech restriction is justified by the requisite standard. *Id.*

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

On one end of the spectrum lies the traditional public forum. Traditional public forums, such as streets, sidewalks, and parks, are places that "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515 (1939).

Next on the spectrum is the designated public forum, which exists when the government intentionally opens its property for expressive activity. *Perry Educ. Ass'n v. Perry Local Educators*, 460 U.S. 37, 44 (1983). As the Supreme Court stated, "[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, *for use by certain speakers*, or *for the discussion of certain subjects*." *Cornelius*, 473 U.S. at 802 (emphasis added).

In a traditional or designated public forum, restrictions on speech are subject to strict scrutiny. *Id.* at 800. Thus, "speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. . . . Similarly, when the government has intentionally designated a place or means of communication as a public forum speakers cannot be excluded without a compelling government interest." *Id.*

At the opposite end of the spectrum is the nonpublic forum. The nonpublic forum is "[p]ublic property which is not by tradition or designation a forum for public communication." *Perry Educ. Ass'n,* 460 U.S. at 46. In a nonpublic forum, the government "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* Thus, even in a nonpublic forum, a speech restriction must be reasonable and viewpoint neutral to pass constitutional muster. *Id.*

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

The Ninth Circuit also recognizes a "limited public forum," which is a subcategory of the designated public forum.  *See Flint v. Dennison*, 488 F.3d 816, 830-31 (9th Cir. 2007).  A "limited public forum" is "a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics."  *Id.* at 831; *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001) (same).  "Once a government has opened a limited forum, it must respect the lawful boundaries it has itself set."  *Flint,* 488 F.3d at 831 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)) (internal quotations and punctuation omitted) (emphasis added).  Accordingly, in a limited public forum "the government may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum, nor may the government discriminate against speech on the basis of its viewpoint."  *Flint*, 488 F.3d at 831 (citations and quotations omitted).

To discern the government's intent, courts "look[] to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum," as well as "the nature of the property and its compatibility with expressive activity."  *Id.*  When conducting this analysis, "actual practice speaks louder than words."  *Grace Bible Fellowship, Inc. v. Maine Sch. Admin. Dist. No. 5,* 941 F.2d 45, 47 (1st Cir. 1991); *see also Hopper*, 241 F.3d at 1076 ("[C]onsistency in application is the hallmark of any policy designed to preserve the non-public status of a forum.  A policy purporting to keep a forum closed (or open to expression only on certain subjects) is no policy at all for purposes of public forum analysis if, in practice, it is not enforced or if exceptions are haphazardly permitted."); *United Food,* 163 F.3d at 353 (stating that "we . . . must closely examine whether in practice [the transit authority] has consistently enforced its written policy in order to satisfy ourselves that [its] stated policy represents its actual policy").

Thus, a forum analysis "involve[s] a careful scrutiny of whether the government-imposed restriction on access to public property is truly part of the process of limiting a

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

nonpublic forum to activities compatible with the intended purpose of the property." *Id.* at 351-52 (internal quotations and citation omitted); *see also Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth.,* 148 F.3d 242, 253 (3d Cir. 1998) (holding that "the purpose of the forum does not suggest that it is closed, and the breadth of permitted speech points in the opposite direction").

In *Lehman v. City of Shaker Heights,* 418 U.S. 298, 304 (1974), the Court found that the consistently enforced, twenty-six-year ban on noncommercial advertising was consistent with the government's role as a proprietor precisely because the government "limit[ed] car card space to innocuous and less controversial commercial and service oriented advertising." Other courts have followed *Lehman* to hold that a total ban on <u>noncommercial</u> speech may be consistent with the government acting in a proprietary capacity and have thus found transportation advertising space to be a nonpublic forum when the government "consistently promulgates and enforces policies restricting advertising on its buses to commercial advertising." *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 978 (9th Cir. 1998); *see also N.Y. Magazine v. Metro. Transp. Auth.*, 136 F.3d 123, 130 (2d Cir. 1998) ("Disallowing political speech, and *allowing commercial speech <u>only</u>*, indicates that making money is the main goal. Allowing political speech, conversely, evidences a general intent to open a space for discourse, and a deliberate acceptance of the possibility of *<u>clashes of opinion and controversy</u>* that the Court in *Lehman* recognized as *<u>inconsistent with sound commercial practice</u>*.") (emphasis added); *see also Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth.*, 767 F.2d 1225 (7th Cir. 1985) (concluding that the advertising space on a bus system became a public forum where the transit authority permitted "a wide variety" of commercial and non-commercial advertising).

As the Sixth Circuit stated in *United Food*:

In accepting a wide array of political and public-issue speech, [the government]

has demonstrated its intent to designate its advertising space a public forum. *Acceptance of a wide array of advertisements*, including political and public-issue advertisements, is indicative of the government's intent to create an open forum. Acceptance of political and public-issue advertisements, *which by their very nature generate conflict*, *signals a willingness on the part of the government to open the property to controversial speech*, which the Court in *Lehman* [*v. City of Shaker Heights,* 418 U.S. 298 (1974)] recognized as *inconsistent with operating the property solely as a commercial venture*.

163 F.3d at 355 (emphasis added).

The forum at issue here is a designated public forum. *Cornelius*, 473 U.S. at 802 (holding that a designated public forum is created when the government "intentionally open[s] a nontraditional forum for public discourse"). As the evidence demonstrates, Defendant accepts "a wide array of advertisements," including very controversial, political- and public-issue advertisements. Indeed, Defendant accepted an advertisement from the federal government (*i.e.*, the "FBI-JTTF Advertisement") *that conveyed precisely the same message* as the AFDI Advertisement. Consequently, Defendant's actions are "inconsistent with operating the property solely as a commercial venture" and thereby create a public forum for speech such as Plaintiffs' advertisement.[3]

Moreover, it is without question that the "nature of the property"—Defendant's advertising space—is "compatible" with Plaintiffs' proposed expressive activity: displaying the AFDI Advertisement within the space. *See United Food*, 163 F.3d at 355 (concluding that the advertising space on a bus system was a public forum and stating that "acceptance of political

---

[3] In *Seattle Mideast Awareness Campaign v. King Cnty.*, 771 F. Supp. 2d 1266, 1275-76 (W.D. Wash. 2011) (hereinafter "*SeaMAC*"), the court concluded—based on the record and arguments presented there—that the forum at issue was a limited public forum. However, as noted in *SeaMAC*, the court's forum inquiry requires an examination of "King County's practice in enforcing its policy." *Id.* at 1275. Thus, a forum analysis is not a static inquiry. As the facts change and develop, so too then does a court's forum analysis, which is based on the facts presented. Consequently, as demonstrated above, Defendant's practice of permitting controversial, political- and public-issue advertisements, particularly including Defendant's acceptance of the FBI-JTTF Advertisement—which occurred well after the *SeaMAC* decision—evidences an intent to create a public forum for speech such as the AFDI Advertisement. Moreover, assuming, *arguendo*, that the forum at issue is a limited public forum, Defendant's restriction on Plaintiffs' speech, as discussed further in the text above, was both unreasonable and viewpoint based in violation of the First Amendment. *See* secs. II.C.3 & 4 *infra*.

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

and public-issue speech suggests that the forum is suitable for the speech at issue"—a pro-union message).  Thus, because the forum is wholly suitable—and, indeed, open—for Plaintiffs' speech, *Christ's Bride Ministries, Inc.,* 148 F.3d at 252 (concluding that the transit authority had "created a forum that is suitable for the speech in question"), it is a designated public forum for the display of the AFDI Advertisement.  Therefore, Defendant must demonstrate a *compelling* reason that is *narrowly tailored* to justify its prior restraint on Plaintiffs' speech—a burden that Defendant cannot meet.

### C.    Defendant's Prior Restraint Cannot Survive Constitutional Scrutiny.

#### 1.    Defendant's Speech Restriction Was Content Based.

Content-based restrictions on speech in a public forum are subject to strict scrutiny. *Cornelius*, 473 U.S. at 800.  That is, "[s]peakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest."  *Id.*  For "[i]t is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995); *see also R.A.V. v. St. Paul*, 505 U.S. 377, 386-92 (1992) (holding that the government may not "impose special prohibitions on those speakers who express views on disfavored subjects" or on the basis of "hostility—or favoritism—towards the underlying message expressed").  Thus, content-based restrictions "are presumptively unconstitutional."  *S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1145 (9th Cir. 1998).

To determine whether a restriction is content based, the court looks at whether it "restrict(s) expression because of its message, its ideas, its subject matter, or its content." *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm. of N.Y.*, 447 U.S. 530, 537 (1980).  Here, Defendant rejected the AFDI Advertisement based on the content (and viewpoint) of its message (and its messenger) in violation of the First Amendment.

### 2. Defendant's "Transit Advertising Policy" Permits Arbitrary, Capricious, and Subjective Application.

As noted by the Supreme Court, "the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use."[4] *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553 (1975).

As the Sixth Circuit held in a case involving the government's regulation of bus advertising: "The absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors." *United Food,* 163 F.3d at 359; *see also Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992) ("A government regulation that allows arbitrary application . . . has the potential for becoming a means of suppressing a particular point of view.").

Consequently, a speech restriction "offends the First Amendment when it grants a public official 'unbridled discretion' such that the official's decision to limit speech is not constrained by *objective criteria*, but may rest on 'ambiguous and subjective reasons.'" *United Food*, 163 F.3d at 359 (quoting *Desert Outdoor Adver., Inc. v. City of Moreno Valley,* 103 F.3d 814, 818 (9th Cir. 1996)) (emphasis added).

Here, Defendant's proffered bases for restricting Plaintiffs' speech are, in the case of the first two bases, facially false[5] and thus unreasonable, and, in the case of the third basis, entirely arbitrary and subjective. Specifically, the third basis, and the one Plaintiffs assume

---

[4] Indeed, even in a nonpublic forum, a government speech regulation must be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n*, 460 U.S. at 46. As demonstrated in the text above, Defendant's speech restriction fails this test as well. *See* secs. II.C.3 & 4 *infra*.

[5] In the email from Titan to Plaintiffs' counsel, Defendant set forth three rationales for refusing to display the AFDI Advertisement. The first is that the AFDI Advertisement is false or deceptive, but the advertisement says nothing more factually than the FBI-JTTF Advertisement, which was approved by Defendant. Nor can the AFDI Advertisement be deceptive since it clearly sets out that AFDI is sponsoring the display. Finally, the AFDI Advertisement cannot be demeaning or disparaging because it is simply a true and accurate factual presentation of global terrorists the FBI seeks to capture.

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

Defendant will principally rely on in this litigation, requires a government official to make a wholly arbitrary determination as to "whether a reasonably prudent person, knowledgeable of the County's ridership and using prevailing community standards," would find the proposed advertisement objectionable. Indeed, attempting to add "objective" language to a wholly subjective endeavor does not save Defendant's restriction from its constitutional infirmities. Consider, for example, the following hypothetical speech restriction: "The transit authority bans all advertisements that a reasonably prudent person, knowledgeable of the County's ridership and using prevailing community standards, would find to be in poor taste or aesthetically displeasing." This hypothetical example, similar to Defendant's Transit Advertising Policy, is not based on any *objective criteria*, but, instead, allows for *ambiguous* and *subjective reasons* for restricting speech in violation of the First Amendment. Indeed, in reality, the dressed-up disguise of objectivity merely hides a viewpoint-based censorship of speech (and speaker) with which Defendant does not agree or simply does not like.

### 3. Defendant's Speech Restriction Is Viewpoint Based.

Viewpoint discrimination is an egregious form of content discrimination that is prohibited in <u>all</u> forums. *See Rosenberger*, 515 U.S. at 829. "The principle that has emerged from [Supreme Court] cases is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (internal quotations and citation omitted). "When the government targets *not subject matter*, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger*, 515 U.S. at 829 (emphasis added).

Consequently, when speech "fall[s] within an *acceptable subject matter* otherwise included in the forum, the State may not legitimately exclude it from the forum based on the viewpoint of the speaker." *Cogswell v. City of Seattle*, 347 F.3d 809, 815 (9th Cir. 2003).

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

Thus, viewpoint discrimination occurs when the government "denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." *Cornelius*, 473 U.S. at 806.

Here, the content of Plaintiffs' message (and thus its subject matter) is permissible in this forum, as evidenced by the fact that Defendant had previously accepted the same message content that was submitted by the federal government (*i.e.*, the "FBI-JTTF Advertisement"). Consequently, it is not the subject matter that is being restricted, but Plaintiffs' viewpoint on the subject. This is a classic form of viewpoint discrimination that is prohibited in <u>all</u> forums. *See Cornelius*, 473 U.S. at 806; *see also Good News Club v. Milford Cent. Sch. Dist.*, 533 U.S. 98, 107-08 (2001) (finding that a public school's exclusion of a Christian club from meeting on its school grounds discriminated on the basis of viewpoint because the school permitted non-religious groups "pertaining to the welfare of the community" to meet at the school).

This conclusion is further buttressed by Defendant's enforcement of a policy that is itself viewpoint based in its application (*i.e.*, the restriction on "demeaning or disparaging" speech). *See, e.g., R.A.V.*, 505 U.S. at 389 (stating that "a State may not prohibit only that commercial advertising that depicts men in a demeaning fashion" without violating the First Amendment); *see also Nieto v. Flatau*, 715 F. Supp. 2d 650 (E.D.N.C. 2010) (holding that a speech restriction on a military base, a nonpublic forum, was viewpoint based as applied to anti-Islam speech in violation of the First Amendment); *see also Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 100 (1st Cir. 2004) (Torruella, J., dissenting) ("The government cannot allow dissemination of one viewpoint that it finds inoffensive or bland, and prohibit the dissemination of another viewpoint that it finds offensive or 'demeaning,' . . . . Such distinctions are viewpoint based, not merely reasonable content restrictions.").

In *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65 (1st Cir. 2004), for example, the court held that the transit authority's restriction on certain advertisements that were critical of

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

laws prohibiting drug use were viewpoint based in violation of the First Amendment. The MBTA attempted to avoid the fact that its restriction was viewpoint based by arguing that a similar message could run if a different manner of expression was used. The court rejected the argument, stating,

> The MBTA's concession means simply that it will run advertisements which do not attract attention but will exercise its veto power over advertisements which are designed to be effective in delivering a message. Viewpoint discrimination concerns arise when the government intentionally tilts the playing field for speech; reducing the effectiveness of a message, as opposed to repressing it entirely, thus may be an alternative form of viewpoint discrimination.

*Ridley*, 300 F.3d at 88.

Thus, attempting to "reduc[e] the effectiveness of a message" or the thrust of its meaning—even if the entire message itself is not prohibited—is a form of viewpoint discrimination that is impermissible in every forum.

In the final analysis, Defendant's restriction on Plaintiffs' speech is viewpoint based in violation of the First Amendment.

### 4. Defendant's Speech Restriction Is Not Reasonable.

Reasonableness is evaluated "in light of the purpose of the forum and all the surrounding circumstances." *Cornelius*, 473 U.S. at 809; *see also Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1222-23 (9th Cir. 2003) (preliminarily enjoining the enforcement of the California Department of Transportation's policy of permitting the display of American flags, but prohibiting the display of all other banners and signs on highway overpass fences, a nonpublic forum, concluding, *inter alia*, that the "proffered justification" for the restriction was "patently unreasonable").

Here, Defendant proffers three justifications for its prior restraint on Plaintiffs' speech: (1) the advertisement contains "material that is or that the sponsor reasonably should have known is false, fraudulent, misleading, deceptive or would constitute a tort of defamation or

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

invasion of privacy"; (2) the advertisement "contains material that demeans or disparages an individual, group of individuals or entity"; and (3) the advertisement "contains material that is so objectionable as to be reasonably foreseeable that it will result in harm to, disruption of or interference with the transportation system." However, in light of the purpose of the forum and all the surrounding circumstances, these justifications are patently unreasonable.

There is nothing false, defamatory, demeaning, or disparaging about publicly displaying _factually correct information about global terrorists_—information that is made available to the public by the federal government no less. Indeed, this is the _very same information_ that was included on an advertisement that Defendant had previously accepted.[6] For similar reasons, there is no basis (reasonable or otherwise) for claiming that Plaintiffs' advertisement "contains material that is _so objectionable_ as to be reasonably foreseeable" that it will harm, disrupt, or interfere with Defendant's transportation system—nor has Defendant proffered any facts to support such a basis so as to justify its prior restraint on Plaintiffs' speech. Indeed, what could be "so objectionable" about the FBI's most wanted list for global terrorists? Perhaps the terrorists whose names and images appear on this list might object, but that is certainly _not_ a reasonable basis for restricting Plaintiffs' right to freedom of speech.

In sum, regardless of the nature of the forum, Defendant's prior restraint on Plaintiffs' speech is unreasonable and thus unconstitutional, thereby warranting the requested injunction.

## III.    Plaintiffs Will Suffer Irreparable Harm in the Absence of an Injunction.

The proof of irreparable harm suffered by Plaintiffs is clear and convincing. It is well established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." _Elrod v. Burns_, 427 U.S. 347, 373 (1976); _see_

---

[6] Moreover, any reasonable viewer of the AFDI Advertisement would conclude that this advertisement is sponsored by Plaintiffs and not the federal government. Indeed, there is nothing misleading or deceptive about this advertisement—it is all spelled out in plain view.

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

*also Brown,* 321 F.3d at 1225 ("To establish irreparable injury in the First Amendment context, [Plaintiffs] need only 'demonstrat[e] the existence of a colorable First Amendment claim.'"); *S.O.C., Inc.,* 152 F.3d at 1148 (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment claim had thereby also demonstrated irreparable harm); *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.") (citing *Elrod*).

## IV. The Balance of Equities Tips Sharply in Favor of Granting the Injunction.

The likelihood of harm to Plaintiffs without the injunction is substantial because the deprivation of First Amendment rights, even for minimal periods, constitutes irreparable injury. *See* sec. III. *supra.* On the other hand, if Defendant is enjoined from enforcing its prior restraint on Plaintiffs' speech, it will suffer no harm because the exercise of constitutionally protected rights can never harm any of Defendant's legitimate interests. *See* sec. V. *infra.*

## V. Granting an Injunction Is in the Public Interest.

Courts, including the Ninth Circuit, considering requests for preliminary injunctions have consistently recognized that the public interest is best served by upholding First Amendment freedoms. *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002) (reversing the denial of a preliminary injunction and recognizing the significant public interest in upholding First Amendment principles); *Homans v. City of Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) (noting that the public interest is better served by protecting the core First Amendment right of political expression); *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (upholding the grant of a preliminary injunction because the "public interest favors protecting core First Amendment freedoms"); *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) (stating that "the public as a whole has a significant interest in . . . protection of First Amendment liberties"); *G*

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774

*& V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest."). Thus, the public interest favors granting the requested injunction.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the court grant this motion and preliminarily enjoin Defendant's prior restraint on Plaintiffs' speech, thereby permitting the display of the AFDI Advertisement on Defendant's buses.

Respectfully submitted,

Stephen Pidgeon Attorney at Law, P.S.

/s/ Stephen Pidgeon
Stephen Pidgeon, Esq. WSBA # 25265
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
attorney@stephenpidgeon.com
Tel: (425) 605-4774; Fax: (425) 818-5371

AMERICAN FREEDOM LAW CENTER

/s/ Robert J. Muise
Robert J. Muise, Esq.* (MI P62849)
P.O. Box 131098
Ann Arbor, Michigan 48113
rmuise@americanfreedomlawcenter.org
Tel: (734) 635-3756; Fax: (801) 760-3901

/s/ David Yerushalmi
David Yerushalmi, Esq.* (DC # 978179)
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20001
david.yerushalmi@verizon.net
Tel: (646) 262-0500;Fax: (801) 760-3901

*Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2013, true and correct copies of the summons, complaint, and civil cover sheet in this matter together with this motion, accompanying exhibits, and proposed order ("Service Documents") were served on Defendant King County by hand delivery upon the following:

> Clerk of the County Council
> 516 Third Avenue, Room 1200
> Seattle, Washington 98104

I hereby also certify that on October 9, 2013, true and correct copies of the Service Documents were emailed as a PDF file to Pete Ramels at pete.ramels@kingcounty.gov, who is the Supervising Attorney – Transportation & Real Property for the King County Prosecuting Attorney Office, Civil Division.

Respectfully submitted,

/s/ David Yerushalmi
David Yerushalmi, Esq.* (DC # 978179)

*Admitted *pro hac vice*.

STEPHEN PIDGEON
Attorney at Law, P.S.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425) 605-4774