# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN FREEDOM DEFENSE INITIATIVE; PAMELA GELLER; ROBERT SPENCER,
       *Plaintiffs-Appellants*,

v.

KING COUNTY,
       *Defendant-Appellee*.

No. 14-35095

D.C. No.
2:13-cv-01804-RAJ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued June 15, 2015
Resubmitted August 5, 2015
San Francisco, California

Filed August 12, 2015

Before: Michael Daly Hawkins, Susan P. Graber,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's denial of a preliminary injunction in an action brought under 42 U.S.C. § 1983 by plaintiffs, American Freedom Defense Initiative and two individuals, after King County's public transit agency, Metro, rejected plaintiffs' "Faces of Global Terrorism" advertisement, which plaintiffs sought to have displayed on the exterior of Metro's buses.

Applying *Seattle Mideast Awareness Campaign v. King County*, 781 F.3d 489 (9th Cir. 2015), the panel first held that plaintiffs had not demonstrated a likelihood of success on their claim that Metro's rejection of their ad violated the First Amendment's guarantee of the freedom of speech. The panel held that the advertising space on buses under the 2012 transit advertising policy was a nonpublic forum, and that Metro's rejection of plaintiffs' ad, on the ground that it was false, likely was reasonable and viewpoint neutral.

The panel also held that plaintiffs had not demonstrated irreparable harm. The panel determined that the district court's denial of a preliminary injunction constrained plaintiffs' speech in only a small way: they cannot express their message on the sides of Metro's buses while their case is pending. The panel stated that nothing in the district court's denial of a preliminary injunction prevented plaintiffs from displaying the same ad in many alternative fora.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Robert Joseph Muise (argued), American Freedom Law Center, Ann Arbor, Michigan; and David Yerushalmi, American Freedom Law Center, Washington, D.C., for Plaintiffs-Appellants.

David J. Hackett (argued) and Linda M. Gallagher, Senior Deputy Prosecuting Attorneys, Seattle, Washington, for Defendant-Appellee.

Sarah A. Dunne, Legal Director, and La Rond M. Baker, ACLU of Washington Foundation; and Venkat Balasubramani, Focal PLLC, Seattle Washington, for Amicus Curiae American Civil Liberties Union of Washington.

**OPINION**

GRABER, Circuit Judge:

Defendant King County's public transit agency, Metro, operates an extensive public transportation system in the greater Seattle metropolitan area, with the primary purpose of providing safe and reliable public transportation. Like many transit agencies, Metro finances its operations in part by selling advertising space, including on the exteriors of its buses. Advertisements must meet guidelines specified in Metro's transit advertising policy. In 2013, Metro rejected an advertisement submitted by Plaintiff American Freedom Defense Initiative, a nonprofit entity headed by Plaintiffs Pamela Geller and Robert Spencer, because Metro concluded that the ad failed to meet the guidelines. Plaintiffs declined to discuss the rejection with Metro and, instead, filed this

action under 42 U.S.C. § 1983. Arguing that Metro's rejection violated the First Amendment, Plaintiffs sought a preliminary injunction requiring Metro to publish the ad. The district court denied the motion, and Plaintiffs filed this interlocutory appeal. Because we conclude that the district court did not abuse its discretion, *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014), we affirm.

FACTUAL AND PROCEDURAL HISTORY

Metro's 2012 transit advertising policy, which was in effect at all times relevant to this appeal, requires that ads on Metro's buses meet certain substantive criteria. In general, advertisements are allowed unless they fall within one of the following eleven categories listed in section 6.2 of the policy:

1. Political campaign speech

2. Tobacco, alcohol, firearms, and adult-related products and services

3. Sexual or excretory subject matter

4. False or misleading

5. Copyright, trademark, or otherwise unlawful

6. Illegal activity

7. Profanity and violence

8. Demeaning or disparaging

AFDI V. KING COUNTY                    5

9.  Harmful or disruptive to transit system

10. Lights, noise, and special effects

11. Unsafe transit behavior

Metro enforces the criteria by screening advertisements for compliance with the policy.

In 2013, the United States Department of State submitted the following advertisement:



Metro reviewed the advertisement, concluded that it met the transit advertising policy's substantive criteria and, accordingly, approved it for display on the exterior of Metro's buses.

After the ad began appearing on bus exteriors, Metro received a small number of complaints from the public, including from a member of Congress and at least two community leaders. The complaints characterized the ad as offensive and expressed concerns that the ad would increase mistreatment of racial, ethnic, and religious minorities who have a similar appearance or name to the persons shown in the ad. In response to the complaints, Metro began a process of reevaluating its approval of the ad. Before that reevaluation concluded, the State Department voluntarily retracted the ad.

The next month, Plaintiffs submitted their own advertisement, which is very similar—but not identical—to the State Department's ad:



Metro rejected the ad because, in Metro's view, it failed to comply with sections 6.2.4, 6.2.8, and 6.2.9 of the transit advertising policy. Those provisions prohibit advertisements that are false or misleading, demeaning or disparaging, or harmful or disruptive to the transit system.

Plaintiffs then filed this action under 42 U.S.C. § 1983. Plaintiffs allege that Metro's rejection of the ad violated their constitutional rights of free speech, equal protection, and due process. Plaintiffs moved for a preliminary injunction on the ground that they are likely to prevail on their First Amendment claim. The district court denied the motion, concluding that Plaintiffs had established none of the requirements for a preliminary injunction. Plaintiffs timely filed this interlocutory appeal.

We initially deferred submission pending this court's resolution of *Seattle Mideast Awareness Campaign ("SeaMAC") v. King County*, 781 F.3d 489 (9th Cir. 2015). After that decision upheld Metro's rejection of a public-issue advertisement under an earlier version of Metro's advertising policy, we ordered supplemental briefing on the effect of that case. We now affirm.

AFDI v. King County                    7

## DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### A. *Likelihood of Success on the Merits*

Plaintiffs argue that they are likely to prevail on the merits of their claim that Metro's rejection of the ad violated the First Amendment's guarantee of the freedom of speech. Our recent decision in *SeaMAC* guides our analysis. That case concerned Metro's rejection of a proposed anti-Israel advertisement under an earlier version of Metro's transit advertising policy. *SeaMAC*, 781 F.3d at 493–95. Metro had rejected the ad, in part on the ground that the ad was harmful or disruptive to the transit system. *Id.* at 493 & n.1, 495. SeaMAC sued under 42 U.S.C. § 1983, alleging a violation of the First Amendment. *Id.* at 495. The district court granted summary judgment to King County, and SeaMAC appealed. *Id.*

We first considered, at great length, the type of forum that Metro had created on the exteriors of its buses. *Id.* at 495–99. We held that Metro had created only a nonpublic forum and not a designated public forum.[1] *Id.* at 498. We clarified that,

---

[1] We noted in *SeaMAC* that the Supreme Court and this court have used the terms "limited public forum" and "nonpublic forum" interchangeably to describe areas that fall short of a classification that warrants heightened scrutiny. 781 F.3d at 496 n.2. Noting that "[t]he label doesn't matter," we

even in a nonpublic forum, the government may not impose "whatever arbitrary or discriminatory restrictions on speech it desires[;] . . . any subject-matter or speaker-based limitations must still be reasonable and viewpoint neutral." *Id.* at 499. We then held that Metro's application of the prohibition against ads considered harmful or disruptive to the transit system met both requirements. *Id.*

Under the heading of the "reasonableness" requirement, *SeaMAC* rejected three separate arguments that are relevant here. First, we held that the standard was reasonable "in light of the purpose served by the forum" because the intended purpose of Metro's buses "is to provide safe and reliable public transportation," and prohibiting harm or disruption to that purpose is reasonable. *Id.* at 499–500. Second, we held that the standard is "sufficiently definite and objective to prevent arbitrary or discriminatory enforcement by County officials," chiefly because the standard is tied to an objectively measurable criterion: whether the ad caused harm or disruption to the transit system. *Id.* at 500. Third, we held that we must ensure that the perceived threat to the transit system was legitimate: "We must independently review the record, without deference to the threat assessment made by County officials, to determine whether it shows that the asserted risks were real." *Id.* at 500–01 (internal quotation marks and brackets omitted). In that regard, we agreed with Metro's assessment of disruption to the transit system

---

chose to use the term "limited public forum." *Id.* We agree that the label is immaterial, because the relevant question is whether we apply heightened scrutiny. But, in light of the Supreme Court's recent decision in *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239 (2015), the proper term likely is "nonpublic forum." *See id.* at 2250–51 (discussing the types of fora). For that reason, we use the term "nonpublic forum."

AFDI v. KING COUNTY   9

because of the significant number, and serious nature, of the threats that Metro had received. *Id.* at 501; *see id.* at 494–95 (detailing the threats Metro received and their effect on Metro's operations). Finally, we held that Metro's rejection of the proposed ad was viewpoint neutral, primarily because Metro decided to reject all pending ads on the topic, both pro-Israel and pro-Palestine. *Id.* at 501–03.

Turning to the case at hand, Plaintiffs first contend that the advertising space on buses is a designated public forum. We disagree. As noted above, we held in *SeaMAC* that the ad space under the earlier version of Metro's transit advertising policy was a nonpublic forum only. The earlier policy and the 2012 policy differ slightly, but those differences either confirm that Metro intended to create a nonpublic forum or have no effect on the forum analysis.

In conducting the forum analysis, "we focus on the government's intent." *Id.* at 496. The 2012 policy states, in a lengthy section dedicated to addressing the type of forum created, that "the County does not intend its acceptance of transit advertising to convert [its ad spaces] into open public forums." *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 789, 803 (1985) ("We will not find that a public forum has been created in the face of clear evidence of a contrary intent . . . ."); *see also Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 680 (1998) (holding that, "with the exception of traditional public fora, the government retains the choice of whether to designate its property as a forum for specified classes of speakers"). Additionally, all three of the factors discussed by *SeaMAC* are identical under the earlier and current policies: (1) Metro adopted a pre-screening process (the policy at issue); (2) Metro has rejected a range of proposed ads, including other public-issue ads; and

(3) the nature of the government property—space on buses whose primary purpose is to provide safe and efficient public transportation—suggests a nonpublic forum. *SeaMAC*, 781 F.3d at 497–98; *see also Walker*, 135 S. Ct. at 2251 (holding that the fact that "the State exercises final authority over [content] . . . militates against a determination that Texas has created a public forum"). Accordingly, we conclude that the advertising space on Metro's buses under the 2012 transit advertising policy is a nonpublic forum.

Because it has created a nonpublic forum only, Metro's rejection of Plaintiffs' advertisement must be reasonable and viewpoint neutral. *SeaMAC*, 781 F.3d at 499. Metro rejected Plaintiffs' advertisement in part because it concluded that the ad violated section 6.2.4 of the 2012 policy. That section prohibits advertisements in the following category:

> *False or Misleading*. Any material that is or that the sponsor reasonably should have known is false, fraudulent, misleading, deceptive or would constitute a tort of defamation or invasion of privacy.

The first "reasonableness" criterion asks whether that standard is reasonable "in light of the purpose served by the forum." *SeaMAC*, 781 F.3d at 499 (internal quotation marks omitted). The purpose of Metro's transit system is to provide safe and efficient public transportation to its customers. Public transit riders are, by necessity, a "captive audience." *Lehman v. City of Shaker Heights*, 418 U.S. 298, 302 (1974) (four-justice plurality) (internal quotation marks omitted); *id.* at 307 (Douglas, J., concurring); *see also Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 977 (9th Cir. 1998) (holding that this concern applies to advertisements on bus

Case: 14-35095, 08/12/2015, ID: 9643435, DktEntry: 51, Page: 11 of 16
Case 2:13-cv-01804-RAJ Document 96-3 Filed 08/12/15 Page 11 of 16

exteriors). Metro has an interest in preventing the dissemination of false information to a captive audience that it has created by providing public transit services. Rules designed to avoid "imposing upon a captive audience" further a "reasonable legislative objective[]" in a nonpublic forum. *Lehman*, 418 U.S. at 304. Accordingly, Metro's prohibition on false ads likely is sufficiently reasonable in light of the purpose served by Metro's buses. *See Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of Los Angeles*, 764 F.3d 1044, 1052 (9th Cir. 2014) (holding that a prohibition on the in-person solicitation of funds from airport travelers in a nonpublic forum was reasonable given the "risk of deceit"); *see also Cornelius*, 473 U.S. at 808 ("The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation.").

The second reasonableness criterion is that the standard must be "sufficiently definite and objective to prevent arbitrary or discriminatory enforcement by County officials." *SeaMAC*, 781 F.3d at 500. Plaintiffs properly point out that truth or falsity may often be in the eye of the beholder. For example, whether God exists can be considered a question of metaphysics or personal belief. Whatever merit that observation has in the abstract, however, there are also some subjects that can be assessed for factual accuracy.

This case provides a good example. Plaintiffs' proposed ad states, in prominent text: "The FBI Is Offering Up To $25 Million Reward If You Help Capture One Of These Jihadis." That statement is demonstrably and indisputably false. The FBI is not offering a reward up to $25 million for the capture of one of the pictured terrorists. The FBI is not offering rewards at all, and the State Department offers a reward of at

most $5 million, not $25 million, for the capture of one of the pictured terrorists.[2]

Plaintiffs do not, and cannot, refute those basic facts. Instead, Plaintiffs speculate that the factual inaccuracies are not relevant because, for example, someone calling the FBI to collect a reward will likely be directed to the State Department. In addition to being speculative, Plaintiffs' assertions are beside the point. It is indisputable that Plaintiffs' proposed ad is plainly inaccurate as a simple matter of fact. As applied here, then, section 6.2.4 likely is "sufficiently definite and objective to prevent arbitrary or discriminatory enforcement by County officials." *SeaMAC*, 781 F.3d at 500.

For the same reasons, the third "reasonableness" criterion—whether an independent review of the record supports Metro's conclusion that the ad is false—also is met. As just explained, two prominent statements in Plaintiffs' proposed advertisement are indisputably false.

The Supreme Court's decision in *New York Times v. Sullivan*, 376 U.S. 254 (1964), is not to the contrary. In that case, the Court held that the government could not punish false private speech about "the official conduct of public officials." *Id.* at 268. *New York Times* does not bear on whether the government may prohibit demonstrably false statements in a nonpublic forum created by the government. King County could not, of course, extend its prohibition on false speech to, for example, traditional public fora or private

---

[2] The State Department does offer a reward up to $25 million for the capture of some persons, but not for one of the persons pictured in Plaintiffs' ad.

publications. But Plaintiffs have not cited—and we have not found—any case suggesting that the holding of *New York Times* applies to reasonable restrictions in a nonpublic forum. We decline to do so here. Because Metro's application of the accuracy standard likely meets all three "reasonableness" criteria announced in *SeaMAC*, we hold that Metro's rejection of the ad for inaccuracy likely was reasonable.

Finally, we conclude that Metro's rejection of the ad for inaccuracy likely was viewpoint neutral. Nothing in the record suggests either that Metro would have accepted the ad with the same inaccuracy if only the ad had expressed a different viewpoint or that Metro has accepted other ads containing false statements.

In sum, we agree with the district court that Plaintiffs have not demonstrated a likelihood of success on the merits, because Metro's rejection of the ad on the ground of falsity likely was reasonable and viewpoint neutral. But we emphasize the limited nature of our holding, which applies only to objectively and demonstrably false statements where the circumstances of the case do not give rise to an inference of unreasonableness or viewpoint-based discrimination.

In that regard, we note that a hypothetical rejection of an ad for a *trivial* inaccuracy might give rise to an inference that the rejection was, in fact, unreasonable or viewpoint-based. For example, an advertisement stating in a chart that, in a given year, 963 abortions had been performed when, in fact, the correct number was 964 could, depending on all the circumstances, suggest an unreasonable or viewpoint-based rejection. The grounds of the rejection here, however, do not raise those concerns. The ad states in prominent text that the FBI offers a reward of up to $25 million. There is a

considerable difference between the FBI, which operates under the jurisdiction of the Department of Justice, and the State Department, a separate federal agency; and the difference between $5 million and $25 million—five times as much—is not de minimis or irrelevant.

Similarly, we note that rejections surviving constitutional scrutiny will, in most if not all cases, concern advertisements that can be corrected easily. Here, for example, Plaintiffs could have submitted a corrected advertisement that substituted "The State Department" for "The FBI" and "$5 million" for "$25 million"—or fixed the factual inaccuracies in countless other ways. An unreasonable response by Metro to an advertiser's attempt to correct factual inaccuracies could give rise to an inference of unreasonableness or viewpoint-based conduct. Here, however, Plaintiffs declined to discuss the rejection with Metro and chose to stand on their factually inaccurate ad.

On this record, we find no inference of unreasonableness or viewpoint-based conduct by Metro. Accordingly, we conclude that Plaintiffs have not established a likelihood of success on the merits with respect to Metro's rejection of the ad on the ground that it was false. We need not, and do not, reach Metro's other reasons for rejecting the ad. *See SeaMAC*, 781 F.3d at 499 ("We conclude that the County's application of [one policy provision] was reasonable and viewpoint neutral, and therefore have no occasion to address the validity of [another policy provision].").

B. *The Remaining Three* Winter *Factors*

To warrant a preliminary injunction, Plaintiffs must demonstrate not only a likelihood of success but also

irreparable harm, a favorable balance of equities, and a finding that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Both before the district court and before us, Plaintiffs have argued only that those three requirements are met because, in their view, they have shown a likelihood of success on the merits. Because we concluded above that Plaintiffs have not demonstrated a likelihood of success, their argument necessarily fails.

But even if Plaintiffs had demonstrated some likelihood of success, they nevertheless would not be entitled to a preliminary injunction. We recently reiterated that, "although a First Amendment claim certainly raises the specter of irreparable harm and public interest considerations, proving the likelihood of such a claim is not enough to satisfy *Winter*." *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 577 (9th Cir. 2014) (internal quotation marks omitted). Here, Plaintiffs cannot satisfy *Winter*, even if they had shown a likelihood of success.

Plaintiffs seek to alter the status quo ante by obtaining an order requiring Metro to publish an ad previously unpublished. Accordingly, they seek a "mandatory injunction." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). Mandatory injunctions are "particularly disfavored." *Id.* at 879 (internal quotation marks omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases . . . ." *Id.* (internal quotation marks omitted).

Plaintiffs cannot meet that high bar, because the district court's denial of a preliminary injunction constrains Plaintiffs' speech in only a small way: They cannot express

their message on the sides of Metro's buses while this case is pending. Nothing in the district court's denial of a preliminary injunction prevents Plaintiffs from displaying the same ad in many alternative fora, for example, on Seattle billboards, in Seattle newspapers, on Seattle television stations, on Seattle buses run by companies other than Metro, or in many venues in other cities. The availability of alternative fora for Plaintiffs' speech weighs against the issuance of a preliminary injunction. *Cf. Cornelius*, 473 U.S. at 809 ("The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message."); *Cogswell v. City of Seattle*, 347 F.3d 809, 818 (9th Cir. 2003) ("Cogswell and other candidates have not been unreasonably censored because they have other forums for campaigning where they are able to communicate material limited by the restriction on this forum."). In sum, even if Plaintiffs had demonstrated some likelihood of success on the merits, they still would not have been entitled to a preliminary injunction because they have not shown that "extreme or very serious damage will result" from the denial of a preliminary injunction. *Marlyn Nutraceuticals*, 571 F.3d at 879.

**AFFIRMED.**