HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN FREEDOM DEFENSE INITIATIVE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KING COUNTY, <br><br> Defendant. | CASE NO. C13-1804 RAJ <br><br> ORDER |

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkt. ## 56, 57.[1]  For the reasons that follow, the Court **GRANTS** Defendant King County's ("the County") motion (Dkt. # 57) and **DENIES** Plaintiffs American Freedom Defense Initiative (AFDI), Pamela Geller, and Robert Spencer's (collectively "AFDI" or "Plaintiffs") motion (Dkt. # 56).

---

[1] The Court strongly disfavors footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e).  Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

## I. BACKGROUND

On January 30, 2014, the Court denied AFDI's motion for a preliminary injunction. Dkt. # 27. AFDI appealed that Order. Dkt. # 28. The United States Court of Appeals for the Ninth Circuit affirmed the Court's Order denying the motion for a preliminary injunction. *Am. Freedom Def. Initiative v. King Cty.*, 796 F.3d 1165 (9th Cir. 2015) ("*AFDI I*"). AFDI unsuccessfully petitioned the Supreme Court for review of the Ninth Circuit's decision. Dkt. ## 43, 44.

In light of the Ninth Circuit's ruling, AFDI submitted a second advertisement to the County. In this advertisement, AFDI attempted to cure the false and misleading language that had appeared in its first advertisement. However, AFDI maintained the same basic format: the advertisement was captioned, "Faces of Global Terrorism," followed by a list of headshots of wanted terrorists. Dkt. # 48 (Amended Complaint) at ¶ 47.

The County's Department of Transportation ("Metro") rejected the second advertisement, explaining that the "Faces of Global Terrorism" theme was disparaging and demeaning toward a group of individuals and therefore would be harmful or disruptive to the transit system. Dkt. # 60 at 20. Metro suggested ways in which AFDI could edit its advertisement to preserve its message while bringing it into compliance with Metro's standards. *Id.* AFDI did not propose a third version of the advertisement, and instead filed its Amended Complaint. Dkt. # 48 (Amended Complaint).

The parties are now before the Court on their cross motions for summary judgment. Dkt. ## 56, 57.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

1  Where the moving party will have the burden of proof at trial, it must affirmatively
2  demonstrate that no reasonable trier of fact could find other than for the moving party.
3  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where
4  the nonmoving party will bear the burden of proof at trial, the moving party can prevail
5  merely by pointing out to the district court that there is an absence of evidence to support
6  the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets
7  the initial burden, the opposing party must set forth specific facts showing that there is a
8  genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby,*
9  *Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most
10 favorable to the nonmoving party and draw all reasonable inferences in that party's favor.
11 *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

**III.  DISCUSSION**

The First Amendment claim analysis regarding free speech on government-owned property is now familiar to the parties.  Briefly, the Court must determine the nature of the forum and then must apply the appropriate scrutiny to the speech restrictions. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985) ("Assuming that such solicitation is protected speech, we must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic.").

The forum at issue in this matter is a nonpublic forum.  Dkt. ## 56 at 15 (AFDI concedes that the forum at issue is a nonpublic forum), 64 at 13 (same); *see also AFDI I*, 796 F.3d at 1169 (finding that "the ad space under the earlier version of Metro's transit advertising policy was a nonpublic forum only."), *Seattle Mideast Awareness Campaign v. King Cty.* ("*SeaMAC*"), 781 F.3d 489, 497 (9th Cir. 2015) (finding that Metro's bus advertising program created a "limited, rather than a designated, public form.").  "Control over access to a nonpublic forum can be based on subject matter and speaker identity so

long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806.

### A. Defendant's restrictions are reasonable.

The "decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808 (emphasis omitted). A speech restriction in a nonpublic forum is reasonable if (1) "the limitation is consistent with preserving the property for the purpose to which it is dedicated," *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 967 (9th Cir. 1999); (2) it is "based on a standard that is definite and objective," *SeaMAC*, 781 F.3d at 499; and (3) an independent review of the record shows that the asserted risks are real, *id.* at 501.

The Court already established that "[t]he purpose of Metro's transit system is to provide safe and efficient public transportation to its customers." *AFDI I*, 796 F.3d at 1170; *see also* Dkt. # 27 at 9. Subsidiary to this is the purpose of Metro's advertising program, which aims "to generate revenue to support the on-going delivery of transportation services to the public." Dkt. # 27 at 9. The Court further determined that the restrictions in Metro's Policy—specifically, sections 6.2.4, 6.2.8, and 6.2.9—are "reasonable restrictions that promote the safety, reliability and quality of the public transit system." *Id.*; *see also AFDI I*, 796 F.3d at 1170 (finding that section 6.2.4 "likely is sufficiently reasonable in light of the purpose served by Metro's buses.").

AFDI does not meaningfully dispute that the restrictions are reasonable in light of Metro's purposes. Instead, AFDI argues that the restrictions are not reasonable as applied to the proposed advertisements. Dkt. ## 56 at 23, 64 at 22. The Court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire

record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). AFDI has not done so here. The Court finds that the restrictions are reasonable in light of Metro's purposes.

The second reasonableness criterion asks whether the standards are "sufficiently definite and objective to prevent arbitrary or discriminatory enforcement by County officials." *AFDI I*, 796 F.3d at 1170 (citing *SeaMAC*, 781 F.3d at 500) (internal quotations omitted). AFDI challenges three sections of Metro's Policy: 6.2.4, 6.2.8, and 6.2.9. The Court finds little doubt that section 6.2.4 is definite and objective within the context of this lawsuit. As the Ninth Circuit concluded, AFDI's first advertisement was "plainly inaccurate as a simple matter of fact." *Id.* at 1171. Therefore, Metro's determination that AFDI's first advertisement was in violation of section 6.2.4 did not require an official to engage in unbridled parsing or subjective reasoning, as AFDI contends it did.

The Court also finds that section 6.2.9 is definite and objective within the context of this lawsuit. Section 6.2.9 is couched in terms of what a "reasonably prudent person, knowledgeable of the County's ridership and using prevailing community standards, would believe[.]" Dkt. # 57-1 at 7. In particular, section 6.2.9 applies the "reasonably prudent person" standard to "material . . . so objectionable that it is reasonably foreseeable that it will result in harm to, disruption of or interference with the transportation system." *Id.* This standard is similar to one that the Ninth Circuit approved in *SeaMAC*. *See SeaMAC*, 781 F.3d at 500 ("We think the same can be said of § 6.4(D). Because its standard is tied to disruption of or interference with the normal operations of the transit system, § 6.4(D) supplies courts with a sufficiently definite and objective benchmark against which to judge the 'disruption' assessments made by

County officials."). For the same reasons that the County's standard was deemed definite and objective in *SeaMAC*, the Court finds that section 6.2.9 is definite and objective here.

The Court similarly finds that section 6.2.8 is based on a standard that is definite and objective within the context of this lawsuit. Section 6.2.8 aims to prevent Metro from approving advertisements that will demean or disparage individuals or groups. Like section 6.2.9, this section utilizes the "reasonably prudent person" standard and applies it to "material that ridicules or mocks, is abusive or hostile to, or debases the dignity or stature of any individual, group of individuals or entity." Dkt. # 57-1 at 7. The Court finds that the terms "demean" and "disparage" have common meanings that are easily understood.[2] *See Am. Freedom Def. Initiative v. Massachusetts Bay Transp. Auth.*, 781 F.3d 571, 582 (1st Cir. 2015) (finding that "the words 'demean' and 'disparage' are not so unclear that the guideline effectively confers the kind of excessive discretion that might raise concerns about surreptitious viewpoint discrimination or the unreasonable targeting of messages for reasons unrelated to the revenue-generating purposes of the forum.") In addition, Metro employs a layered screening process to be sure that a proposed advertisement meets this standard. *Cf. Hopper v. City of Pasco*, 241 F.3d 1067, 1078 (finding that the city's failure to pre-screen submitted works led to inconsistent enforcement and therefore the policy lacked definite standards). Specifically, advertisements are submitted to the Transit Advertising Contractor for an initial review as well as the Transit Advertising Program Manager for a compliance review. Dkt. # 56-2 at 30, 56. The Program Manager then has the discretion to submit a proposed advertisement to the Transit Division General Manager for further review. *Id.* at 56. In

---

[2] With regard to AFDI's second advertisement, Metro had the added benefit of hearing from the community to confirm that reasonably prudent people found the "Faces of Global Terrorism" theme to disparage and demean a certain group of individuals. Dkt. ## 14 at ¶¶ 14-17, 60 at ¶ 5.

ORDER- 6

light of the terms' commonly understood meanings and Metro's layered screening process, the Court finds that section 6.2.8 is sufficiently definite and objective.

Finally, the Court must independently determine whether the record supports the County's assertion that AFDI's second proposed advertisement will either "result in harm to, disruption of or interference with the transportation system" or will disparage or demean a group of individuals. The County presented sufficient evidence to support the assertion that AFDI's second proposed advertisement was disparaging or demeaning toward people of Middle Eastern or South Asian descent, especially those who identify as Muslims. Specifically, the County received complaints and letters expressing the concern that juxtaposing the language, "Faces of Global Terrorism," next to headshots of certain individuals leads riders to believe that, generally, people of Middle Eastern or South Asian descent, and especially those who practice Islam, are terrorists. Dkt. # 14 at ¶¶ 14-17. In August 2013, members of the community joined with representatives from the government and several prominent civil rights groups to discuss the "Faces of Global Terrorism" theme in Metro bus advertisements. Dkt. # 60 at ¶ 5. The feedback from this community meeting provides clear evidence that the "Faces of Global Terrorism" advertisement does in fact disparage and demean a certain group of individuals. The Court is satisfied that the record supports the County's assertion that AFDI's second advertisement was demeaning or disparaging to a certain group of individuals.

B. <u>Defendant's restrictions are viewpoint neutral.</u>

Even if the County's regulations are reasonable, they may be unconstitutional if they discriminate on the basis of viewpoint. *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 980 (9th Cir. 1998) ("Viewpoint discrimination is a form of content discrimination in which 'the government targets not subject matter, but particular views taken by speakers on a subject.'") (citations omitted). AFDI can prevail on its First Amendment claim by proving that "the government intended to 'suppress expression

merely because public officials oppose the speaker's view.'" *SeaMAC*, 781 F.3d at 502 (citing *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

Metro initially accepted the State Department's "Faces of Global Terrorism" advertisement but subsequently determined that its tone was demeaning and disparaging. As a result, the State Department voluntarily withdrew the advertisement. AFDI used identical language from the State Department advertisement in its second advertisement. By rejecting this second advertisement, Metro did not block AFDI from submitting an advertisement about global terrorism—a subject about which Metro accepts advertisements, *see* Dkt. # 56-2 at 21—but rather prevented AFDI from using demeaning and disparaging language in an advertisement about global terrorism. In fact, Metro is amenable to running AFDI's advertisement with different language—a move that signifies Metro's willingness to alert passengers to the specific list of terrorists provided by AFDI. *See* Dkt. # 60 at 20 (email offering concrete ways in which AFDI can bring the advertisement into compliance with section 6.2.8). Metro is not preventing AFDI from espousing its basic viewpoint that stopping one of the listed terrorists will save lives.[3] With a simple correction, AFDI is free to run its advertisement on Metro's buses. *See AFDI I*, 796 F.3d at 1172 ("Similarly, we note that rejections surviving constitutional scrutiny will, in most if not all cases, concern advertisements that can be corrected easily.") Restricting speech in this way is permissible in a nonpublic forum. *SeaMAC*, 781 F.3d at 502 ("In a limited public forum, the government may impose content-based

---

[3] AFDI argues that its second advertisement expresses a viewpoint about which Metro disagrees and therefore Metro's restrictions are not viewpoint neutral. Dkt. # 56 at 17. However, AFDI's advertisements are aimed at alerting riders to certain dangerous terrorists, notifying those riders that if they catch a terrorist they may save countless lives. AFDI does not claim that its viewpoint is that all men of Middle Eastern or South Asian descent, especially those who practice Islam, are terrorists. *Id.* (stating that AFDI's viewpoint is that the *specific* terrorists portrayed in the advertisement are the faces of global terrorism). Therefore, Metro appears willing to work with AFDI to present its viewpoint—that catching even one of the listed terrorists will save lives—in a way that does not demean or disparage an entire group of individuals.

restrictions on speech as a 'means of ''insuring peace'' and 'avoiding controversy that would disrupt' the business of the forum.") (quoting *Cornelius*, 473 U.S. at 809-810). Therefore, the Court finds that the County's speech restriction is viewpoint neutral.

AFDI's remaining claims are dependent on its First Amendment claim. Dkt. # 48 (Amended Complaint) at ¶¶ 65-73. The Court finds in favor of the County on the First Amendment claim and therefore need not analyze the remaining claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment (Dkt. # 57) and **DENIES** Plaintiffs' motion for summary judgment (Dkt. # 56).

Dated this 2nd day of November, 2017.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge